IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |  |
|---|---|---|
| CHRISTIAN HEATH CRAWFORD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:21-cv-00419 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CREATIVE COST CONTROL, CORP. | ) | By:  Hon. Thomas T. Cullen |
| d/b/a SERVPRO OF ROANOKE, | ) |         United States District Judge |
| MONTGOMERY, & PULASKI, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Christian Crawford brings this action against Defendant Creative Cost Control, Corp., d/b/a SERVPRO of Roanoke, Montgomery, & Pulaski ("SERVPRO"), a company that he contends specializes in "disaster cleaning" and "biohazard decontamination" of restaurants, businesses, and other public spaces. (Compl. ¶ 6 [ECF No. 1].) Crawford worked for SERVPRO as a crew chief for over five years. During his employment, Crawford periodically received his supervisors' permission to miss work to provide regular bowel and bladder care for his brother, Chance Crawford ("Chance"). Chance has been paralyzed for over 40 years and depends on Crawford for daily care.[1]

At the start of the COVID-19 pandemic in early 2020, because Crawford was his brother's primary source of care, he requested leave to quarantine at home to avoid exposing

---

[1] On brief, Crawford further explains that he is the only family member available to step into this role for Chance; his father is too elderly, his mother is deceased, and he has no children of his own. (ECF No. 8, at 10 n.7.) For some reason, Crawford did not mention these important facts in his complaint, and the court does not consider them in deciding the motion to dismiss.

Chance to the virus. SERVPRO denied this request and, instead, terminated his employment on April 27, 2020. Crawford then brought this suit alleging violations of the Family and Medical Leave Act ("FMLA") and the Families First Coronavirus Response Act ("FFCRA"). This matter is before the court on SERVPRO's motion to dismiss.[2]

## I. BACKGROUND

The facts are taken from Crawford's complaint and are accepted as true for purposes of considering the pending motion to dismiss. According to Crawford, SERVPRO specializes in "disaster cleaning" and "proactive viral pathogen cleaning" of "restaurants, businesses and public spaces," and their employees are "trained and experienced in biohazard decontamination . . . ." (*Id.*) In January 2015, SERVPRO hired Crawford as a crew chief charged with overseeing various job sites. Crawford's work performance was "excellent" and he "met or exceeded SERVPRO's expectations." (Compl. ¶ 11.)

While employed at SERVPRO, Crawford routinely left work to care for his brother, Chance, who is paralyzed and confined to a wheelchair as a result of a football injury that he suffered nearly 40 years ago. Because of his paralysis, Chance requires daily bowel and bladder care, which Crawford provides. SERVPRO allegedly knew about Crawford's caretaking responsibilities when it hired him, and routinely gave him permission to take time off work to care for Chance.

In April of 2020 SERVPRO, like many employers across the country, closed for two weeks in response to the emerging COVID-19 pandemic. Following medical advice, Chance

---

[2] The court has reviewed the pleadings and arguments of the parties. Oral argument is not necessary as the facts and legal arguments are adequately raised in the parties' briefs, and oral argument would not aid the court in deciding the issues before it.

began to quarantine at home because of his underlying health condition and his heightened risk of a severe and potentially fatal infection should he be exposed to COVID-19. On April 27, 2020, SERVPRO reopened and expected Crawford to return to work. Chance remained quarantined for 2.5 months until his employer secured him a private entrance to his workplace and the ability to quarantine in his office. To protect his brother and continue to provide for his medical needs, Crawford requested leave to quarantine pursuant to FFCRA and the FMLA. SERVPRO denied Crawford's requested leave. Instead, it fired Crawford on the day it reopened for having "abandoned" his job. (Compl. ¶ 38.)

Crawford filed suit in this court, alleging that SERVPRO interfered with his rights under the FMLA (Count I) and discriminated and retaliated against him in violation of the FMLA (Count II). Crawford also alleges that SERVPRO interfered with his rights under the FFCRA (Count III) and discriminated and retaliated against him in violation of the FFCRA (Count IV). SERVPRO now moves to dismiss all four counts for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations,"

complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

### III. ANALYSIS

#### A. FMLA Claims

Crawford alleges that SERVPRO both interfered with his rights under the FMLA (Count I) and discriminated and retaliated against him by terminating his employment in violation of the FMLA (Count II). The FMLA provides that (1) an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]," and (2) an employer cannot "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a). The first type of claim is known as an "interference" claim, and the second is considered "discrimination" or "retaliation." *See Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244–45 (4th Cir. 2020).

To succeed on a claim for interference under the FMLA, a plaintiff must show that "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). To succeed on a claim for discrimination and retaliation under the FMLA, a plaintiff must show that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's

protected activity. *Mercer v. Arc of Prince Georges Cnty., Inc.*, 532 F. App'x 392, 398 (4th Cir. 2013) (per curiam).

"Congress made clear that one of the purposes of the FMLA was 'to balance the demands of the workplace with the needs of families . . . and to promote national interests in preserving family integrity.'" *Dillon v. Md.-Nat'l Cap. Park & Plan. Comm'n*, 382 F. Supp. 2d 777, 787 (D. Md. 2005), *aff'd*, 258 F. App'x. 577 (4th Cir. 2007). To achieve this purpose, an eligible employee is "entitled to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Chance's paralysis qualifies as a "serious health condition" under this act, and SERVPRO does not contest this application.[3]

SERVPRO, however, challenges the FMLA claim, insofar as it is premised on Crawford standing *in loco parentis* to his brother, Chance. The FMLA dictates that "son or daughter" includes "a child of a person standing *in loco parentis*" who is either under 18 or "18 years of age or older and incapable of self-care because of a mental or physical disability." *Id.* § 2611(12). "Persons who are '*in loco parentis*' include those with day-to-day responsibilities to care for and financially support a child . . . ." 29 C.F.R. § 825.122(d)(3). "The key in determining whether the relationship of *in loco parentis* is established is found in the *intention* of the person allegedly *in loco parentis* to assume the status of a parent toward the child." *Dillon*, 382 F. Supp. 2d at 787. Such intent "can be inferred from the acts of the parties." *Id.* Courts may also

---

[3] The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B).

consider a number of factors in determining whether a person stands *in loco parentis* to another, including: "(1) the age of the [person]; (2) the degree to which the [person] is dependent on the person claiming to be standing *in loco parentis*; (3) the amount of support, if any, provided; and (4) the extent to which duties commonly associated with parenthood are exercised." *Id.*

SERVPRO argues that Crawford's FMLA claims should be dismissed because Crawford only alleges that he provides daily care for Chance but does not allege that he provides financial support. SERVPRO also asserts that Crawford has not alleged that he had the requisite intention to serve in a parental role towards Chance. As such, SERVPRO argues, Crawford fails to properly allege *in loco parentis* status.[4] Crawford asserts that financial support is not required under the FMLA, but is instead just one factor a court can consider when determining whether a person stands *in loco parentis* to another.

Crawford has alleged that Chance is over 18 years old and incapable of self-care because of his paralysis. Crawford also alleges that he "put himself in the situation of a parent" to Chance by providing his daily bowel and bladder care. (Compl. ¶ 51.) The complaint demonstrates, however, that Chance was gainfully employed during the relevant time period, and Crawford does not allege that he ever provided financial support to Chance. Thus, although Crawford provides some day-to-day care for Chance, he does not allege that he supports him financially.

---

[4] SERVPRO also argues that the FMLA does not cover care of siblings. While this is an accurate statement, *see* 29 U.S.C. § 2612(a)(1)(C), the court construes Crawford's complaint as alleging only *in loco parentis* status. If Crawford's only basis for his FMLA claim was his sibling relationship, the claim would be dismissed.

In response, Crawford points to a Department of Labor ("DOL") Fact Sheet that states that "persons who are *in loco parentis* include those with day-to-day responsibilities to care for *or* financial support a child." (*See* ECF No. 1-2 (emphasis added).) The fact sheet discusses the same four factors the court enumerated in *Dillon*[5] with one notable change—the third factor states "the amount of *financial* support, if any, provided." (*See id.* (emphasis added).) SERVPRO asserts that the court should not consider the Fact Sheet because it conflicts with the regulation's plain language.[6]

But the regulation's text itself provides a sufficient basis for holding Crawford has properly alleged *in loco parentis* status at this stage. The regulation provides that "[p]ersons who are "*in loco parentis*" *include those* with day-to-day responsibilities to care for and financially support a child . . . ." 29 C.F.R. § 825.122(d)(3) (emphasis added). "The word 'includes' is usually a term of enlargement, and not of limitation." *Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008). "[A] term whose statutory definition declares what it 'includes' is more susceptible to extension of meaning . . . than where . . . the definition declares what a term 'means.'" *Id.* (cleaned up).

Because the term "includes" is generally non-exhaustive, the court does not interpret this regulation as requiring both day-to-day responsibilities *and* financial support for one person to stand *in loco parentis* to another. Rather, the regulation provides a non-exhaustive set

---

[5] "(1) [T]he age of the [person]; (2) the degree to which the [person] is dependent on the person claiming to be standing *in loco parentis*; (3) the amount of support, if any, provided; and (4) the extent to which duties commonly associated with parenthood are exercised." *Dillon*, 382 F. Supp. 2d at 787.

[6] SERVPRO observes that DOL interpretations of its own regulations are not entitled to deference under *Auer v. Robbins* if they are "plainly erroneous or inconsistent with the regulation." 519 U.S. 452, 461 (1997). Because the court does not base its ruling on deference to the Fact Sheet, but rather on its interpretation of the plain meaning of the regulation itself, it will not delve into an analysis of *Auer* deference.

of considerations for determining whether someone stands *in loco parentis*. This reading is bolstered by the fact that all the subsections preceding § 825.122(d)(3) employ the word "means" rather than "includes" when defining different terms. *See, e.g.*, § 825.122(d) ("[S]on or daughter means a biological, adopted, or foster child, a stepchild, a legal ward, or a child of a person standing *in loco parentis* . . . ."); § 825.122(d)(1) ("Incapable of self-care means that the individual requires active assistance or supervision to provide daily self-care . . . ."); § 825.122(d)(2) ("Physical or mental disability means a physical or mental impairment that substantially limits one or more of the major life activities of an individual . . . ."). If the regulation drafters intended § 825.122(d)(3) to provide exclusive requirements for *in loco parentis* status, they likely would have drafted this subsection with the same definitiveness as the prior subsections. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012) ("Indeed Congress used the narrower word "means" in other provisions of the FLSA when it wanted to cabin a definition to a specific list of enumerated items."); *Groman v. Comm'r. of Internal Revenue*, 302 U.S. 82, 86 (1937) ("[W]hen an exclusive definition is intended the word 'means' is employed . . . whereas here the word used is 'includes'.").

Under the plain terms of the regulation, financial support is not a necessary requirement for someone to stand *in loco parentis*. And the court is satisfied that Crawford has pleaded sufficient facts about his daily-care responsibilities for his brother to allege that he stood *in loco parentis*. Crawford provides Chance with daily bowel and bladder care that he is unable to provide for himself. This is care of the type a parent or primary caregiver would provide to a child or an adult with a serious health condition. Of course, this is not to say that Crawford has established that he stood *in loco parentis* to Chance—a critical issue of material

fact that will be borne out (or not) through discovery—only that Crawford's FMLA claim is sufficiently pleaded to survive this motion to dismiss. The court will therefore deny SERVPRO's motion to dismiss as to Counts I and II.

## B. FFCRA Claims

Crawford alleges that SERVPRO interfered with his rights under the FFCRA (Count III) and discriminated and retaliated against him by terminating his employment in violation of the FFCRA (Count IV). FFCRA requires certain employers to provide their employees with two weeks of paid sick leave[7] or expanded family and medical leave for specified reasons related to COVID-19. Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127, §§ 5102, 5110(5), 134 Stat. 178, 196, 199–200 (2020). Under FFCRA, a covered employer's employees must receive paid sick time if the employee is unable to work due to a need to care for an individual who has been advised by a healthcare provider to self-quarantine in response to COVID-19. FFCRA § 5102(a)(4).

Employers whose employees are "emergency responders" are excluded from FFCRA's definition of "employer" and therefore exempt from providing expanded family and medical leave to their employees. 29 C.F.R. § 826.309(c)(2) (expired Dec. 31, 2020). Under the FFCRA, "[e]mergency responders" are defined as

> anyone necessary for the provision of transport, care, healthcare, comfort and nutrition of such patients, or others needed for the response to COVID-19. *This includes but is not limited to* military or national guard, law enforcement officers, correctional institution personnel, fire fighters, emergency medical services personnel,

---

[7] A full-time employee seeking leave to care for a family member is eligible for up to 80 hours of leave paid at 2/3 of his regular rate or 2/3 the applicable minimum wage, whichever is higher, up to $200 per day and $2,000 in the aggregate over a two-week period. Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127, §§ 5102, 5110(5), 134 Stat. 178, 196, 199–200 (2020).

> physicians, nurses, public health personnel, emergency medical technicians, paramedics, emergency management personnel, 911 operators, child welfare workers and service providers, public works personnel, *and persons with skills or training in operating specialized equipment or other skills needed to provide aid in a declared emergency,* as well as individuals who work for such facilities employing these individuals and whose work is necessary to maintain the operation of the facility.

*Id.* (emphasis added).

SERVPRO claims that it is an emergency responder and therefore did not violate FFCRA by refusing to grant Crawford leave to care for Chance. Crawford argues that SERVPRO does not qualify as an emergency responder.

At the outset, the same principles of interpretation that applied to the definition of "*in loco parentis*" under the FMLA apply to the definition of "emergency responder" under FFCRA. By qualifying the list of possible emergency responders with "[t]his includes but is not limited to," the DOL plainly intended for the list to be non-exhaustive. Further, the DOL interprets emergency responder "broadly." Paid Leave Under the Families First Coronavirus Response Act ("Paid Leave Under FFCRA"), 85 Fed. Reg. 19,326-01, 19,335 (April 6, 2020). In crafting this regulation, the DOL "endeavored to include those categories of employees who (1) interact with and aid individuals with physical or mental health issues . . . ; (2) ensure the welfare and safety of our communities and of our Nation; (3) have specialized training relevant to emergency response; and (4) provide essential services relevant to the American people's health and wellbeing."[8] *Id.*

---

[8] The Department emphasized that FFCRA seeks to strike a balance between "provid[ing] for paid sick leave and expanded family and medical leave so employees will not be forced to choose between their paychecks and the individual and public health measures necessary to combat COVID-19" and ensuring that this leave "does not come at the expense of fully staffing the necessary functions of society, including the functions of emergency responders." Paid Leave Under FFCRA, 85 Fed. Reg. at 19,335. "The FFCRA should be read to

On brief, Crawford argues that SERVPRO "does not provide care to patients" and that many professions are needed in some way for the response to COVID-19; merely connecting SERVPRO's work to the pandemic does not alone does not establish that they are emergency responders. Yet Crawford's complaint identifies SERVPRO as a specialist in "proactive viral pathogen cleaning" of "restaurants, businesses and public spaces." (Compl. ¶ 6.) He alleges that SERVPRO employees are "trained and experienced in biohazard decontamination . . . ." (*Id.*) Finally, in April 2020, SERVPRO "was active in cleaning up COVID-19 exposed structures and did not have proper PPE [(personal protective equipment)] in place." (*Id.* ¶ 33.)

Crawford's specific factual allegations about SERVPRO are fatal to his FFRCA claims. Employees engaged in proactive viral pathogen cleaning of public spaces fall under "persons with skills or training in operating specialized equipment or other skills needed to provide aid in a declared emergency." 29 C.F.R. § 826.309(c)(2) (expired Dec. 31, 2020). The DOL's stated purpose of the FFCRA—"to complement . . . the work being done on the front lines to treat COVID-19 patients, and prevent the spread of COVID-19, and simultaneously keep Americans safe and with access to essential services"—supports this finding. *See* Paid Leave Under FFCRA, 85 Fed. Reg. at 19,335. Particularly around the time SERVPRO terminated Crawford's employment, before any vaccines or medical interventions for COVID-19 were widely available, maintaining clean and sanitary public spaces was crucial to preventing the spread of the disease.

---

complement—and not detract from—the work being done on the front lines to treat COVID-19 patients, prevent the spread of COVID-19, and simultaneously keep Americans safe and with access to essential services." *Id.*

As alleged in Crawford's complaint, SERVPRO employees had specialized training in biohazard decontamination and were deployed throughout the community to clean up COVID-19 exposed structures. Based on these allegations, the court finds that these employees are "emergency responders" under FFCRA. That finding excludes SERVPRO from FFCRA's definition of "employer" as a matter of law and, as a result, FFCRA's requirement to provide expanded family and medical leave does not apply to SERVPRO. Because SERVPRO is excluded from the reach of the FFCRA, Crawford has failed to state a claim for violation of the FFCRA. The court will grant SERVPRO's motion to dismiss Crawford's FFCRA claims.

## IV.  CONCLUSION

For these reasons, the court will deny SERVPRO's motion to dismiss as to Crawford's FMLA claims (Counts I and II) and grant SERVPRO's motion to dismiss with respect to Crawford's FFCRA claims (Counts III and IV).

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 1st day of November, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE